William G. WITTMANN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–5C.

United States Court of Federal Claims.

Feb. 3, 1997.

Charles R. Oldham, St. Louis, Missouri, for plaintiff.

Steven E. Gordon, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kirk T. Manhardt, Washington, D.C., for defendant.

## OPINION

ANDEWELT, Judge.

### I.

In this contract action, plaintiff, William G. Wittmann, seeks to recover damages relating to his purchase of real estate property from the Internal Revenue Service (IRS) at a public tax auction. In 1993, the IRS seized the property in issue from taxpayers Mark W. and Cindy M. Mirth for their failure to pay properly assessed federal income taxes for tax years 1986, 1988, 1989, and 1990. After issuing a "Notice of Public Auction Sale" for the property in question, the IRS sold the property to plaintiff, the high bidder at the auction. The IRS informed the Mirths of their right to redeem the property and after the Mirths did not exercise their redemption

rights within the time permitted, plaintiff secured the deed to the property and purchased two outstanding Deeds of Trust, *i.e.*, mortgages, on the property. Plaintiff later discovered that a third Deed of Trust was enforceable against the property in the name of Creative Funding, Inc. With accrued interest, the debt from the third Deed of Trust exceeded the total value of the property.

Plaintiff's complaint contains two counts— Count I, entitled "EXPRESS OR IMPLIED CONTRACT," and Count II, entitled "TORT CLAIM." Both claims attack the alleged actions of Debra Dufek, an agent and employee of the IRS. At the auction, the IRS supplied all prospective bidders with a "Notice of Encumbrances Against or Interests in Property Offered for Sale." The notice listed three distinct Deeds of Trust on the property in issue, the two plaintiff purchased upon securing title to the property plus the third held by Creative Funding. The complaint alleges that shortly before the bidding began, Dufek announced to the potential bidders that she had spoken to a trustee regarding the rights of the holder of the third Deed of Trust, that she had been told that this Deed of Trust had been discharged in bankruptcy, and that a Deed of Release could be obtained and the purchaser at the auction would receive title clear of this lien on the property.

Prior to instituting this action, plaintiff sought relief in other forums with respect to Dufek's actions. Plaintiff filed suit in the United States District Court for the Eastern District of Missouri presenting a claim of misrepresentation pursuant to the Federal Tort Claims Act (FTCA) and a Fifth Amendment takings claim against individual IRS employees, including Dufek, pursuant to the theory in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The district court dismissed the misrepresentation claim on the ground that the United States had not waived sovereign immunity for the tort of misrepresentation and dismissed the *Bivens* claim on the ground that the existence of a possible remedy in the Court of Federal Claims pursuant to the Tucker Act precluded the *Bivens* claim

against the individual IRS employees. Plaintiff also filed an administrative claim with the IRS under the FTCA. The IRS dismissed that claim on the ground that the applicable two-year statute of limitations for administrative claims had run.

In Count I of the instant complaint, plaintiff, in effect, alleges that Dufek's statements regarding the third Deed of Trust were part of the offer the IRS made with respect to the sale of the property and that plaintiff, as high bidder at the auction, accepted that offer to create an enforceable contract. Plaintiff alleges that defendant breached the terms of the contract by failing to deliver title to the property free and clear of the disputed Deed of Trust. In Count II, plaintiff attacks Dufek for acting in reckless disregard of plaintiff's rights by falsely representing the status of the disputed Deed of Trust. Plaintiff alleges, *inter alia*, that Dufek never spoke to the trustee and was never told that the Deed of Trust had been discharged in bankruptcy. This action is before the court on defendant's motion for summary judgment on Count I and for dismissal of Count II for lack of jurisdiction. For the reasons set forth below, defendant's motion is granted on both counts.

## II.

The undisputed facts are as follows. On February 25, 1993, the IRS issued the "Notice of Public Auction Sale" for the property in dispute, which stated: "Only the right, title and interest of Mark W. and Cindy M. Mirth in and to the property will be offered for sale. If requested, the [IRS] will furnish information about possible encumbrances, which may be useful in determining the value of the interest being sold. (See the back of this form for further details.)" The back of the notice, under the title "Nature of Title," stated:

The right, title, and interest of the taxpayer ... in and to the property is offered for sale subject to any prior valid outstanding mortgages, encumbrances, or other liens in favor of third parties against the taxpayer that are superior to the lien of the United States. All property is offered for sale "where is" and "as is" and without re-

course against the United States. No guaranty or warranty, express or implied, is made as to the validity of the title, quality, quantity, weight, size, or condition of any of the property, or its fitness for any use or purpose. No claim will be considered for allowance or adjustment or for recission of the sale based on failure of the property to conform with any expressed or implied representation.

Prior to the start of the bidding, Dufek distributed to all potential bidders an IRS Form 2434–B, entitled "Notice of Encumbrances Against or Interests in Property Offered for Sale." The notice of encumbrances stated:

> [The property] is offered *subject* to any prior outstanding mortgages, encumbrances, or other liens in favor of third parties, which are valid against the taxpayer and are superior to the lien of the United States. The reverse of this document provides information regarding possible encumbrances or interests which may be useful in determining the value of the interest being sold. . . .
>
> The property will be sold "as is" and "where is" and without recourse against the United States. The Government makes no guaranty or warranty, expressed or implied, as to the validity of the title. . . . No claim will be considered for allowance or adjustment or for recission of the sale based upon failure of the property to conform with any representation, expressed or implied.

The notice of encumbrances listed the three Deeds of Trust mentioned above. With respect to the third Deed of Trust held by Creative Funding, the notice stated: "There is a court order issued by the Bankruptcy court writ[ ]ing this loan off to "0" due. Creative Funding filed bankruptcy." Below the list of encumbrances, the notice restated that the IRS did not warrant the correctness or completeness of the information provided and warned that "[b]idders should, therefore, verify for themselves the validity, priority, and amount of encumbrances against the property offered for sale."

Before the start of the bidding and after allegedly making the disputed statements concerning the Creative Funding mortgage, Dufek stated that the property was being sold "as is" and subject to any outstanding valid mortgages, encumbrances, or other liens. After being declared the purchaser of the property, plaintiff received a Certificate of Sale which limited the property transferred to plaintiff to only the "right, title, and interest of the taxpayer in and to the real property." After the Mirths' right to redeem the property expired, plaintiff secured the deed to the property.

### III.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." RCFC 56(c). There is a dispute as to precisely what Dufek said at the auction prior to the start of the bidding. This dispute, however, is not material because, based on other facts which are undisputed, even if Dufek made the statements alleged in the complaint, defendant is still entitled to summary judgment on Count I.

■ Count I alleges breach of contract. To establish an enforceable contract with the United States, a party must demonstrate a mutual intent to contract, including an offer, an acceptance, and consideration passing between the parties. *Fincke v. United States,* 230 Ct.Cl. 233, 244, 675 F.2d 289, 295 (1982). In addition, the party must demonstrate that the government representative who entered the agreement had actual authority to bind the government in contract. *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed. Cir.1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). For contracts among private parties, there is no similar requirement to show actual authority. It is sufficient that the agent have "apparent authority" to bind the principal in

contract.[1] The added requirement of actual authority for government contracts places a significant burden on a party negotiating an agreement with a government representative. As explained in *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947): "[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."[2]

■ The scope of Dufek's authority with respect to the auction is defined in IRS Manual § 56(17)5.21, which provides:

> The revenue officer will offer only the right, title, and interest of the United States in and to the property and such interest will be offered subject to any prior outstanding mortgages, encumbrances, or other liens in favor of third parties which are valid and are superior to the rights of the United States. The property will be offered "as is" and "where is" and without recourse against the United States. No guarantee of warranty, express or implied, will be made by the revenue officer as to the validity of the title, quality, quantity, weight, size or condition of any of the property, or its fitness for any use or purpose.

*See also* 26 U.S.C. § 6339(b)(2) (the IRS can sell only "the right, title, and interest [the indebted taxpayer has] in and to the real property"). Thus, Dufek had the authority to sell only the United States' interest in the property and to offer such interest subject to any prior outstanding mortgages, encumbrances, or other liens. Because the Creative Funding Deed of Trust was outstanding and was superior to the United States' interest in the property, Dufek lacked authority to offer the property free and clear of Creative Funding's Deed of Trust. Hence, assuming Dufek made the disputed representations and these representations constituted a part of the offer accepted by plaintiff, the resulting agreement would not be enforceable against the United States because it was beyond Dufek's actual authority.

■ Plaintiff argues that even assuming Dufek lacked authority to include such a commitment in a contract, plaintiff is entitled to monetary relief because he can establish the factual predicates for a misrepresentation claim. Pursuant to the Restatement (Second) of Contracts § 164, a contract is voidable when: (1) defendant made a misrepresentation; (2) the misrepresentation was either fraudulent or material; (3) the misrepresentation induced plaintiff to enter into the contract; and (4) plaintiff was justified in relying on the misrepresentation. *Morris v. United States*, 33 Fed.Cl. 733, 745 (1995). Plaintiff argues that Dufek's misrepresentations induced him to purchase the property, that he justifiably relied upon the misrepresentations, and hence that the court should deem the contract void. The flaw in plaintiff's argument is that plaintiff cannot prevail under the Restatement standard because, as a result of the various disclaimers in the notice of sale, notice of encumbrances, and Dufek's statements delivered at the auction, plaintiff cannot satisfy the requirement that plaintiff was justified in relying upon the alleged misrepresentations.

The disclaimers were straightforward and unambiguous and if enforced would bar plaintiff's claim. As summarized above, the IRS warned plaintiff, *inter alia*, that "[n]o claim will be considered for ... adjustment or for recission of the sale based on failure of the property to conform with any representation, express or implied" and that plaintiff

---

1. The Restatement (Second) of Agency § 8 defines apparent authority as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Such authority "is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Id.* § 27.

2. With respect to this distinction between government contracts and private contracts, the Supreme Court explained: "[T]he rules of law whereby private ... companies are rendered liable for the acts of their agents are not bodily applicable to a Government agency ... unless Congress has so provided." *Merrill*, 332 U.S. at 383 n. 1, 68 S.Ct. at 3 n. 1.

"should ... verify for [himself] the validity, priority, and amount of encumbrances against the property offered for sale." Plaintiff does not contend that he was unaware of these disclaimers or that Dufek in any way suggested that the disclaimers would not control if any representation proved false. Rather, plaintiff bases his claim essentially on the nature and delivery of the disclaimers. Plaintiff argues that the disclaimers in the notice of sale were "reminiscent of a used car pitch or rapidly read disclaimer found in some radio and T.V. commercials." As to the disclaimers Dufek delivered orally at the auction, plaintiff complains:

> Dufek rapidly read the disclaimers and then foreclosed any questions about the [Creative Funding] Deed of Trust and immediately proceeded to receive bids without giving plaintiff and the others any opportunity to check on her statements and determine the validity for themselves. Telling a person they have responsibility to make an independent evaluation and then giving them no time to do so reminds one of a technique used by car salesmen to the effect that some one else is ready to buy if you delay.

In *Morris,* 33 Fed.Cl. at 745, this court reviewed the applicable case law in detail and concluded: "Generally, the [Court of Federal Claims] has not allowed recission of real estate purchase contracts for alleged misrepresentation where any warranty was *expressly* disclaimed." Defendant bases its motion for summary judgment on express disclaimers and plaintiff has failed to present any evidence or legal argument that suggests that the disclaimers do not control.

Although plaintiff may have been led astray by Dufek's representations as to the status of the disputed Deed of Trust, plaintiff has not made any factual contention to the effect that the government misrepresented its position that the government was selling the property subject to all outstanding valid encumbrances and that plaintiff could not rely upon the accuracy of Dufek's representations. Indeed, prior to the auction plaintiff apparently had a copy of the notice of sale which stated clearly that the property was being offered subject to any prior valid outstanding encumbrances and that no claim would be considered for recision of the sale based on failure of the property to conform with any expressed or implied representation. Hence, if plaintiff considered the details of possible encumbrances to be crucial, plaintiff could have performed his own title search prior to the auction or taken such other steps necessary to clarify the status of any outstanding Deeds of Trust. Plaintiff chose not to protect himself through such actions and proceeded instead to bid on the property based on Dufek's alleged oral representations concerning the disputed Deed of Trust. In this factual setting, plaintiff's decision to submit a bid amounted to a voluntary act in which he must be held to have assumed the risk with respect to the accuracy of Dufek's alleged representations. Given the unambiguous nature of the disclaimers, plaintiff was not justified in relying upon any such representations.

■ Two additional points are worthy of note. First, the court well appreciates that acts of misrepresentation by government agents must be discouraged and can never be condoned. Second, the court recognizes that auctions create an atmosphere in which some individuals make uncharacteristically rash decisions. But the government should have the same rights as any other entity doing business to use disclaimers to limit potential liability. With respect to the pressures of an auction setting, auction bidders, like consumers in other commercial settings, should reasonably be held responsible for incorporating into their decision making unambiguous statements that describe the conditions upon which an item is offered for sale.[3]

---

3. Plaintiff presents an alternative theory that the court should void the contract because both parties were under the mistaken belief that Creative Funding's Deed of Trust had been discharged in bankruptcy. But a contract is voidable on the theory of mutual mistake only where there is no allocation of risk between the parties with respect to any such mistake. Restatement (Second) of Contracts § 152. The various disclaimers described above provided that the IRS was offering the property for sale subject to any outstanding mortgages or encumbrances and placed the risk on plaintiff with respect to the veracity of

Defendant has presented a properly supported motion for summary judgment. In response, plaintiff has failed to demonstrate the existence of any dispute as to a material issue of fact or that defendant is not entitled to judgment as a matter of law. Hence, the court must grant defendant's motion for summary judgment on Count I.

## IV.

Count II alleges that in making the disputed representations, Dufek acted in reckless disregard of plaintiff's rights in that Dufek never spoke to the trustee and was never told that the Creative Funding Deed of Trust had been discharged in bankruptcy. Defendant moves to dismiss Count II for lack of jurisdiction. When a defendant contests this court's jurisdiction over a claim, the plaintiff has the burden to demonstrate that this court possesses such jurisdiction. *Navajo Tribe of Indians v. United States*, 220 Ct.Cl. 117, 127, 597 F.2d 1362, 1367 (1979).

The Tucker Act, 28 U.S.C. § 1491(a)(1), explicitly excludes from the scope of this court's jurisdiction cases sounding in tort. The Tucker Act provides: "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

Plaintiff entitled Count II "TORT CLAIM" and this title is apt because Count II alleges the disregard of another's rights by misrepresenting facts, an action that is classically characterized as a tort. *See* Restatement (Second) of Torts § 304. Plaintiff acknowledges that this court lacks jurisdiction over tort claims in general but argues that this court has jurisdiction over claims of tortious breach of contract and that the complaint herein should be interpreted to contain such an allegation. But Count II, as drafted, does not allege a tortious breach of contract but rather only a tort. Moreover, Dufek delivered the disputed statements before plaintiff successfully bid on the property and any representations made by IRS agents as to the

hence, at the time of the alleged misrepresentations, no contract existed with which the government tortiously could interfere. Therefore, the court must dismiss Count II as sounding in tort.

### *Conclusion*

For the reasons set forth above, defendant's motion for summary judgment on Count I and for dismissal of Count II is granted. The Clerk of the Court shall enter judgment dismissing plaintiff's complaint. No costs.

IT IS SO ORDERED.

existence of such mortgages.